UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------X

THE TILE SETTERS AND TILE FINISHERS
UNION of NEW YORK and NEW JERSEY,
LOCAL UNION NO. 7 of the INTERNATIONAL          **OPINION AND ORDER**
UNION of BRICKLAYERS and ALLIED                 06-cv-5211 (KAM)
CRAFTWORKERS,

                                    Petitioner,

-against-

SPEEDWELL DESIGN/BFK ENTERPRISE, LLC

                                    Respondent.

--------------------------------------X

**KIYO A. MATSUMOTO**, United States District Judge:

          Petitioner, The Tile Setters and Tile Finishers Union

of New York and New Jersey, Local Union No. 7 of the

International Union of Bricklayers and Allied Craftworkers

("Local 7" or the "Union"), commenced this action against

respondent Speedwell Design/BFK Enterprise, LLC ("Speedwell") to

compel Speedwell to appear and participate in arbitration before

the Tile Industry Joint Arbitration Board regarding Speedwell's

alleged violations of a collective bargaining agreement ("CBA")

between the parties.  The parties filed cross-motions for

summary judgment on March 14, 2008.  As discussed in detail

below, the court finds that Speedwell is not bound by the CBA

under which Local 7 seeks to compel arbitration, entitled

"Agreement between The Greater New York and New Jersey Tile

Contractors Association, Inc. and The Building Contractors Association of Atlantic County, Inc. and The Tile Setters and Tile Finishers Union of New York and New Jersey, Local Union No. 7 of the International Union of Bricklayers and Allied Craftworkers," dated June 2, 2003 ("2003 Association CBA").[1]  The court therefore denies Local 7's motion for summary judgment to compel arbitration under the 2003 Association CBA, grants Speedwell's motion for summary judgment, and dismisses the petition.[2]

## I.    BACKGROUND

### A.    The Parties

The following facts are undisputed.  Petitioner Local 7 is a labor organization as defined under Section 301 of the Labor Management Relations Act of 1947, as amended, 29 U.S.C. § 185.  (Doc. No. 17, Petitioner's Rule 56.1 Statement in Support of Local 7's Motion for Summary Judgment to Compel Arbitration ("Local 7 56.1 Stmt.") ¶ 1.)  Local 7 came into existence in November 1993 through the merger of the following unions:  the Tile Setters — Local 52; the Tile Finishers in

---

[1]     The industry associations that negotiated the 2003 CBA with Local 7 — The Greater New York and New Jersey Tile Contractors Association, Inc. and The Building Contractors Association of Atlantic County, Inc. — are hereinafter referred to collectively as the "Associations."

[2]     In its opposition memorandum, Speedwell includes a single line requesting that the court order Local 7 "to pay Speedwell's attorney's fees and costs of suit in defending this case."  (Opp. at 1.)  Speedwell never raises this issue again, and provides no legal authority for the proposed sanction.  The court finds that Local 7's petition is not so frivolous as to merit an award of attorney's fees and costs to Speedwell absent Speedwell providing a legal basis under which it seeks the award.

southern New Jersey — Local 77; the Tile Finishers in the Metropolitan New York area — Local 88; the Marble Finishers — Local 20; the Marble Setters — Local 4; and the Terrazzo Workers — Local 3 and Local 65. (Local 7 56.1 Stmt. ¶ 5.) Respondent Speedwell is a subcontractor that performs, *inter alia*, tiling work on larger construction projects and has its principal offices in Morristown, New Jersey. (See Local 7 52.1 Stmt. ¶¶ 2,[3] 14, 18; Speedwell Design 56.1 Counter Statement ("Speedwell 56.1 Reply") ¶ 2.)

### B.    Related Litigation between the Parties

Local 7 and Speedwell are parties in a separate but related lawsuit also pending before this court, Del Turco v. Speedwell Designs, 02-CV-5369 (KAM).[4] The claims in the Del Turco matter involve claims and cross-claims between Local 7, various union benefit funds, and Speedwell that are not relevant to the present matter. However, the Del Turco matter has obligated this court to examine the validity of certain CBAs between Local 7 and Speedwell, one of which is relevant here.

In Del Turco, Local 7 sought summary judgment on a claim that Speedwell failed to pay union dues under a 1997

---

[3]    Local 7's Local Rule 56.1 statement contains an apparent clerical error:  there are two paragraphs numbered "2," followed by a paragraph numbered "3," and no paragraph numbered "4."  The court designates the two paragraphs numbered "2" as "2A" and "2B," respectively.  The "¶ 2" referred to here is the redesignated ¶ 2B in Local 7's Rule 56.1 statement.
[4]    Only those aspects of the Del Turco case that are relevant to the decision in the current case are described here.

agreement entitled "AGREEMENT Between Tile Layers Subordinate Union of New York & New Jersey of the International Union of Bricklayers and Allied Crafts and Employer."[5] See Del Turco, 02-CV-5369, Memorandum and Order of March 31, 2009, § IV.A. On February 20, 2001, while Speedwell was performing work on a job known as the "Waterview Project" in Parsippany, New Jersey, Speedwell's President, Barry Kolsky, on behalf of Speedwell, signed a copy of a preprinted CBA entitled "AGREEMENT Between Tile Layers Subordinate Union of New York & New Jersey of the International Union of Bricklayers and Allied Crafts and Employer" with the dates "From May 5, 1997 to May 4, 2000" preprinted on its cover. (Local 7 56.1 Stmt. §§ 10-12.) The preprinted 1997 Local 52 CBA was modified by hand as follows: the name "Speedwell Design" was handwritten at the top of the front cover of the booklet; the number "1" was handwritten over the last digit in the phrase "from May 5, 1997 to May 4, 2000," modifying the final date to May 4, 2001; and the words "May 2000 to May 2003" were handwritten at the top of the last page of the booklet and initialed by Kolsky with the letters "BK." These modifications resulted in the "2001 Local 52 CBA." (Local 7 Mot., Ex. 2; Local 7 56.1 Stmt. § 12; Doc. No. 28, Speedwell 56.1 Reply ¶ 12.)

---

[5]    This agreement (the "1997 Local 52 CBA") is in the record of the current case at Petitioner's Motion for Summary Judgment ("Local 7 Mot."), Ex. 2. (Doc. 15, Attach. 5.)

Speedwell contends, in both the Del Turco matter and
this case, that Kolsky believed that he was signing a project
labor agreement for the Waterview Project only, and not a CBA.
However, in Del Turco, this court rejects Speedwell's position,
and finds that the 2001 Local 52 CBA was a valid CBA binding
Local 52 and Speedwell to a contract between May 2000 and May
2003.  See Del Turco, 02-CV-5369, Memorandum and Order of March
31, 2009, § III.A.

Local 7 moved for summary judgment in the Del Turco
matter pursuant to the 2001 Local 52 CBA (and a separate CBA not
relevant here), seeking unpaid dues for the period from February
20, 2001 to May 31, 2003, corresponding to the effective dates
of the 2001 Local 52 CBA.  In opposition, Speedwell argued,
*inter alia*, that Local 7 had failed to exhaust arbitration under
the 2001 Local 52 CBA.  (See Dkt. 02-CV-5369, Docs. No. 119
(Speedwell's summary judgment motion), 133 (Local 7's summary
judgment motion), 134 (Speedwell's opposition), 135 (Local 7's
opposition and reply), and 138 (Speedwell's reply).)  In Del
Turco, the court denies Local 7's motion for summary judgment on
the issue of unpaid dues under the 2001 Local 52 CBA because the
court finds that Local 7 had not claimed unpaid dues in its
complaint.  See Del Turco, 02-CV-5369, Memorandum and Order of
March 31, 2009, § IV.A.  On the issue of exhaustion of
arbitration, the court finds that Speedwell, through the manner

5

in which it had pursued the <u>Del Turco</u> litigation, waived its exhaustion defense.  <u>See</u> <u>Del Turco</u>, 02-CV-5369, Memorandum and Order of March 31, 2009, § III.D.

**C.    The 2001 Local 52 CBA and the 2003 Association CBA**

*1.    Relevant provisions of the 2001 Local 52 CBA*

Despite the 1993 creation of Local 7 by the merger of the numerous tile and bricklaying locals, the local unions that had merged into Local 7 initially continued to use their own separate CBAs, including the preprinted 1997 Local 52 CBA which became the 2001 Local 52 CBA, as described above.  (Local 7 56.1 Stmt. ¶ 6.)

The 2001 Local 52 CBA, signed by Speedwell's President, Barry Kolsky, states, on page 1, that it is a trade agreement "between THE GREATER NEW YORK TILE CONTRACTORS ASSOCIATION and TILE CONTRACTORS ASSOCIATION OF NEW JERSEY, INC., hereinafter referred to as the ('Association' or the 'Employer') on their behalf and on the behalf of their respective members, who are members at the time of the execution of this Trade Agreement or may become members during the life of this Trade Agreement and any extension or renewals thereof, and [Local 52]."  (Local 7 Mot. Ex. 2.)

Article XV of the 2001 Local 52 CBA is entitled "Arbitration," and provides, in relevant part:

> There shall be a Joint Arbitration Board
> consisting of four (4) members of the Union
> and four (4) members of the Association.
> The Board shall be empowered to hear and
> determine all charges and complaints arising
> out of the violation of any terms, covenants
> or conditions contained in this Agreement
> except claims, disputes and demands arising
> out of the Employer's fringe benefit
> contribution and audit obligations[.]

(<u>Id.</u>, Art. XV § 1.)  Article XXIV of the 2001 Local 52 CBA is entitled "Renewal," and provides, in relevant part:

> Both parties to this Agreement shall be held
> subject to all provisions herein contained
> while the Agreement continues in force.
> Notice of any contemplated changes by either
> side shall be given in writing by the party
> contemplating such change or changes at
> least three (3) months prior to the
> expiration of this Agreement, and unless
> such notice is received within the time
> herein specified, this Agreement shall be
> considered binding until a new Agreement is
> signed.

(<u>Id.</u> Art. XXIV § 1.)[6]  Article XXVIII of the 2001 Local 52 CBA, entitled "Complete Arrangement," states *inter alia* that the "Agreement supersedes all prior agreements and understandings between the parties and constitutes the entire agreement of the parties with respect to the subject matter hereof," and that "[n]o provision of this Agreement shall be modified, amended or terminated, except by a writing specifically referring to this

---

[6]    A provision of this type is commonly referred to as an "evergreen clause."

Agreement and signed by all of the parties hereto." (Id. Art. XXVIII §§ 2-3.)

### 2. Adoption and relevant provisions of the 2003 Association CBA

In 2003, "[a]fter long and protracted negotiations," Local 7 "merged the Local 77 Tile Finishers, Local 88 Tile Finishers, and the Local 52 Tile Setters individual contracts effective June 2, 2003 into one Tile Industry Local 7 CBA" – the 2003 Association CBA. (Local 7 56.1 Stmt. ¶ 9.) The 2003 Association CBA was negotiated and signed by Local 7 and the Associations and became effective on June 2, 2003. (Doc. No. 22, Speedwell's Statement of Material Facts Pursuant to Local Rule 56.1 ("Speedwell 56.1 Stmt.") ¶ 319; Local 7 Mot. Ex. 3; Local 7 Response to Speedwell Design's Statement of Material Facts Pursuant to Local Rule 56.1 ("Local 7 56.1 Reply") ¶ 319; Hill. Aff., ¶ 20.) Speedwell contends that it is not a signatory to the 2003 Association CBA and has never been a member of either of the Associations that negotiated the 2003 Association CBA with Local 7. (Speedwell 56.1 Stmt. ¶¶ 320-21.) Speedwell also asserts that it "did not take part in the negotiations [of the 2003 Association CBA], nor was Speedwell informed of them," and that "Speedwell did not receive a copy of the [2003 Association CBA] until this lawsuit began." (Id. ¶¶ 322-23.)

Local 7 does not claim that Speedwell was notified of or participated in the negotiations, nor does Local 7 claim that Speedwell signed the 2003 Association CBA or received a copy of it prior to this suit. Instead, Local 7 disputes Speedwell's assertion that it is not a signatory of the 2003 Association CBA as a "conclusion of law," and contends that "by virtue of its signed [2001 Local 52 CBA] with Speedwell, Speedwell's failure to give proper and timely notice of its intent to terminate that agreement in the manner specified in the evergreen clause renders Speedwell in a continuous collective bargaining relationship with Local 7." (Local 7 56.1 Reply ¶ 320.) Local 7 contends that Speedwell's assertion that it has never been a member of the Associations is "irrelevant and immaterial as Speedwell clearly signed the [2001 Local 52 CBA] as an Independent Employer," but does not dispute Speedwell's assertion. (Id. ¶ 321.) Local 7 challenges Speedwell's assertions that it was not notified of and did not take part in the 2003 negotiations, and that it did not receive the 2003 Association CBA until this lawsuit, as "not supported by a citation to the record" and "inappropriate in the context of a 56.1 statement." (Local 7 56.1 Reply ¶¶ 322-23.)

The 2003 Association CBA, like the 2001 Local 52 CBA, states on page 1 that it was entered into between the Associations "on their behalf and on behalf of their respective

9

members, who are members at the time of the execution of this

Trade Agreement or may become members during the life of this

Trade Agreement and any extension or renewals thereof" and Local

7.

Article XX of the 2003 Association CBA, entitled

"Grievance-Arbitration," establishes a Joint Arbitration Board

similar to that in the 2001 Local 52 CBA. (Local 7 Mot., Ex.

3.) As to arbitration, Article XX of the 2003 Association CBA

states in relevant part:

> With the express exception of fringe benefit
> contribution and payroll audit obligations,
> in the event a dispute arises in connection
> with the meaning, interpretation, or
> application of this Agreement, including but
> not limited to disputes regarding work
> rules, overtime, etc., such dispute shall be
> submitted for final and binding
> determination to the Joint Arbitration
> Board. . . . [which] shall have all the
> powers granted to arbitrators pursuant to
> the Civil Practice Law and Rules of the
> State of New York and shall be authorized to
> compel the production of books and records
> involved in a dispute.

(Id., Art. XX § 1(B).) Article XX of the 2003 Association CBA

also provides that the arbitrator "shall have authority and

jurisdiction only to interpret or apply the terms and conditions

of this Agreement and shall be prohibited from adding to,

subtracting from, or otherwise modifying or changing any term or

condition thereof." (Id., Art. XX § 1(E).) The 2003

Association CBA also contains an evergreen clause, in Article

XXXI, requiring notice of "any contemplated changes by either side" at least three months prior to the expiration of the 2003 Association CBA, and specifies that "unless such notice is received within the time herein specified, this Agreement shall be considered binding until a new Agreement is signed." (Id., Art. XXXI § 1.)

Article XXXIV of the 2003 Association CBA, entitled "Complete Arrangement," states in relevant part that the "Agreement supersedes all prior agreements and understandings between the parties and constitutes the entire agreement of the parties with respect to the subject matter hereof," and that "[n]o provision of this Agreement shall be modified, amended or terminated, except by a writing specifically referring to this Agreement and signed by all of the parties hereto." (Id., Art. XXXIV §§ 2-3.)

The 2003 Association CBA became effective on June 2, 2003 and continued through June 5, 2006 with respect to the Greater New York and New Jersey Tile Contractor's Association, Inc. and through June 5, 2008 with respect to the Building Contractor's Association of Atlantic County, Inc. (Id., Art. XXXIII.)

### D. Demand for Arbitration and Petition to Compel

On September 26, 2006, Local 7 filed a Demand for Arbitration against Speedwell charging that, from June 2, 2003

11

to the present, Speedwell had continuously violated the 2003

Association CBA by:

  a)  Failing to recognize LOCAL 7 as the
      exclusive bargaining representative of
      all employees within the bargaining unit
      in violation of Article I of the
      successor CBA;[7]

  b)  Wrongfully assigning employees, who are
      not members of LOCAL 7, to perform work
      within the territorial and craft
      jurisdiction of the UNION in violation
      of Articles II and III of the successor
      CBA;

  c)  Failing to require its employees to
      become and remain members of LOCAL 7 and
      failing to terminate those employees who
      did not tender periodic dues to Local 7
      on or after their eighth day of
      employment, in violation of Article 5
      Sections (a) and (b) of the successor
      CBA;

  d)  Failing and refusing to: A) permit
      LOCAL 7 to designate its contractually
      allotted number of Tile Setters and Tile
      Finishers on the Employer's job sites
      where craft jurisdiction was being
      performed; and B) employ members of
      LOCAL 7 from the Qualified Tile
      Finishers list for work performed by the
      Employer within the geographical and
      craft jurisdiction of the UNION, thereby
      violating Article VI of the successor
      CBA;

  e)  Failing to pay its employees performing
      work covered within the craft
      jurisdiction of the Union the wages and
      fringe benefit contributions set forth
      in the schedules contained therein,

_____

[7]     Local 7 refers to the 2003 CBA as the "successor CBA" in its Demand for
Arbitration and its Petition.

thereby violating Article IX of the
successor CBA;

f) Failing to designate a journeyman Tile
Setter as a foreman on all jobs within
the territorial and craft jurisdiction
of the UNION in violation of Article
XIII of the successor CBA;

g) Failing and refusing to permit the UNION
to designate "working Shop Stewards" on
any job where two (2) or more Tile
Setters/Tile Finishers are employed in
violation of Article XIV of the
successor CBA;

h) Failing to provide the UNION with notice
that it had secured commercial contracts
requiring the performance of work
covered by the successor CBA in
violation of Article XVI of that
Agreement; and

i) Failing to post and maintain a payment
bond to serve proper and timely
contributions to the Taft-Hartley
employee benefit funds in violation of
Article XXIV of the successor CBA.

(Local 7 56.1 Stmt. ¶ 28.) Local 7 filed a grievance with the

Tile Industry Joint Arbitration Board in or around September

2006, alleging the same violations and seeking arbitration.

(Id. ¶ 30.) On September 26, 2006, Local 7's Demand for

Arbitration was served on Speedwell, which refused to submit the

dispute to arbitration. (Id., ¶¶ 31-32; Speedwell 56.1 Stmt.

¶ 327.)

The next day, September 27, 2006, Local 7 filed this

petition to compel arbitration against Speedwell. (Doc. No. 1,

"Pet.".)  Local 7 asserts that the issues in this suit arise solely under the 2003 Association CBA and differ from those in the Del Turco case, in which all of Local 7's claims arose in the period between 1997 and 2003 and relate to "CBAs that were in effect from 2000-2003 and earlier."  (Local 7 56.1 Stmt. ¶ 33.)  The petition to compel arbitration lists the same claims listed in the Demand for Arbitration, *supra*, and asserts as its sole request for relief that "Speedwell be compelled to hear and determine the issues raised regarding the violations of [the 2003 Association CBA] as detailed in the Notice of Intention to Arbitrate pursuant to the procedures outlined Article XX of the successor C.B.A.," i.e., the 2003 Association CBA. (Pet. ¶ 13.)

## II.  DISCUSSION

### A.  Jurisdiction

The parties have not contested the court's subject matter jurisdiction over this case.  Nonetheless, the court notes that it has subject matter jurisdiction over this petition pursuant to § 301(a) of the Labor Management Relations Act, which provides for federal court jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . without respect to the amount in controversy or without regard to the citizenship of the parties."  29 U.S.C. § 185.  Federal courts have subject matter jurisdiction over a

labor organization's suit to compel arbitration under a collective bargaining agreement pursuant to 29 U.S.C. § 185. <u>United Steelworkers of America v. Warrior & Gulf Navigation Co.</u>, 363 U.S. 574, 582-83 (1960); <u>Engineers Assoc. v. Sperry Gyroscope Co.</u>, 251 F.2d 133, 134-35 (2d Cir. 1957) (<u>cert. denied</u>, 356 U.S. 932 (1958).

## B.   **Statute of Limitations**

A cause of action for judicial enforcement to compel arbitration pursuant to § 301 of the Labor Management Relations Act accrues when the arbitration agreement is breached by one party refusing a demand to arbitrate.  <u>Associated Brick Mason Contractors of Greater New York, Inc. v. Harrington</u>, 820 F.2d 31, 36 (2d Cir. 1987).  The Second Circuit has held that the statute of limitations for a suit to compel arbitration expires six months after the refusal of the demand for arbitration.  <u>Id.</u> at 37.  Here, Local 7 demanded arbitration on September 26, 2006 and filed its motion to compel arbitration one day later, on September 27, 2006, well within the six month statute of limitations.[8]

---

[8]    Speedwell's argument that the statute of limitations on Local 7's claim has expired mistakenly focuses on the time limit for demanding arbitration under the CBA.  (<u>See</u> Speedwell Opp. at 12-14.)  As <u>Associated Brick Mason Contractors</u> makes clear, however, the issue of whether a *demand for arbitration* is timely is a question for the arbitrator, not the court.  820 F.2d at 36.  Speedwell confuses that issue with the issue that *is* for the court to decide — whether the cause of action for judicial relief under 29 U.S.C. § 185 has been brought within six months of the refusal of a demand to

## C.    **Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure states
that a court shall grant a motion for summary judgment "if the
pleadings, the discovery and disclosure materials on file, and
any affidavits show that there is no genuine issue as to any
material fact and that the movant is entitled to judgment as a
matter of law."  Fed. R. Civ. P. 56(c).  "[T]he plain language
of Rule 56(c) mandates the entry of summary judgment . . .
against a party who fails to make a showing sufficient to
establish the existence of an element essential to that party's
case, and on which that party will bear the burden of proof at
trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  In
deciding a motion for summary judgment, the court's function is
not to resolve disputed issues of fact, but only to determine
whether there is a genuine issue to be tried.  Anderson v.
Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  In establishing
that the issue of fact is a "genuine" issue, the party resisting
summary judgment cannot rest on "mere allegations or denials"
but must instead "set forth specific facts showing there is a
genuine issue for trial."  Fed. R. Civ. P. 56(e); see also Nat'l
Westminster Bank USA v. Ross, 676 F. Supp. 48, 51 (S.D.N.Y.
1987) ("Speculation, conclusory allegations, and mere denials

---

arbitrate.  See also Schweizer Aircraft Corp. v. Local 1752, 29 F.3d 83, 88
(2d Cir. 1994).

are not enough to raise genuine issues of fact.") (<u>aff'd sub</u>

<u>nom.</u> <u>Yaeger v. Nat'l Westminster</u>, 962 F.2d 1 (2nd Cir. 1992)

(unpublished table decision); <u>Harlen Assocs. v. Incorporated</u>

<u>Vill. of Mineola</u>, 273 F.3d 494, 499 (2d Cir. 2001) ("[M]ere

speculation and conjecture is [sic] insufficient to preclude the

granting of the motion."). Each statement of material fact by

the movant or opponent must be followed by a citation to

evidence which would be admissible, as required by Fed. R. Civ.

P. 56(e) and Local Civil Rule 56.1(d).

Moreover, "the mere existence of some alleged factual

dispute between the parties will not defeat an otherwise

properly supported motion for summary judgment; the requirement

is that there be no *genuine* issue of *material* fact." <u>Anderson</u>,

447 U.S. at 247-48 (emphasis in original). No genuine issue of

material fact exists "unless there is sufficient evidence

favoring the nonmoving party for a jury to return a verdict for

that party. If the evidence is merely colorable, . . . or is

not significantly probative, . . . summary judgment may be

granted." <u>Id.</u> at 249-50 (internal citations omitted).

### D.  **The Court's Role in Determining Questions of Arbitration**

The existence of a valid contract to arbitrate, and

the scope of that contract to arbitrate, are matters for the

court, not the arbitrator. "Whether or not a company is bound

to arbitrate, as well as what issues it must arbitrate, is a matter to be determined by the court, and a party cannot be forced to 'arbitrate the arbitrability question.'" <u>Litton Financial Printing Div. v. Nat'l Labor Relations Bd.</u>, 501 U.S. 190, 208 (1991) (addressing arbitration in the labor context and quoting another labor-context case, <u>AT&T Tech., Inc. v. Commc'ns Workers</u>, 475 U.S. 643, 651 (1986)); <u>see also</u> <u>In re American Express Merchants' Litigation</u>, 554 F.3d 300, 311 (2d Cir. 2009) (holding, in non-labor context, that an attack on the validity of the arbitration clause is a matter for the court to decide); <u>Stotter Div. of Graduate Plastics Co. v. District 65</u>, 991 F.2d 997, 1000 (2d Cir. 1993) (stating, in labor context, that "courts are entrusted with the threshold determination whether a dispute is subject to arbitration under an assertedly applicable agreement to arbitrate."). The only circumstance in which the arbitrator may decide the arbitrability of the dispute is where there is "clear and unmistakable" evidence that the parties agreed to submit the question of the arbitrability of the dispute to the arbitrator. <u>First Options of Chicago, Inc. v. Kaplan</u>, 514 U.S. 938, 944-45 (1995).

### 1. *Presumption of arbitrability*

A party to a CBA containing a broad arbitration clause is bound by the terms of the arbitration clause during the CBA's lifetime, and national labor policy requires that doubts about

whether a particular dispute should be subject to arbitration "be resolved in favor of coverage." United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 583 (1960). "[W]here an effective bargaining agreement exists between the parties, and the agreement contains a broad arbitration clause, there is a presumption of arbitrability in the sense that an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." Litton, 501 U.S. at 209 (quotations and citations omitted).

Beyond the gateway questions of whether the parties have agreed to arbitrate under the agreement, and the scope of that agreement, questions relating to the procedures for arbitration and substantive defenses to the arbitration are for the arbitrator to decide, not the court. Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 84-85 (2002) (holding that the application of an arbitration time-limit rule was a question for the arbitrator); Int'l Union of Operating Eng'rs v. Flair Builders, Inc., 406 U.S. 487, 491 (holding that the defense of laches must be decided by the arbitrator where the arbitration agreement is broad enough to include "any difference" between the parties); Enter. Assoc. Metal Trades Branch Local Union 638 v. Empire Mech., Inc., No. 91 Civ. 5014, 1992 WL 84689, *2

(S.D.N.Y. April 9, 1992) (holding that the defense of *res judicata* is for the arbitrator)(but see Kelly v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 985 F.2d 1067, 1069 (11th Cir. 1993)).

## 2. *Post-expiration survival of arbitration provisions of the CBA*

The presumption in favor of arbitration is strong enough that in certain circumstances the courts enforce a duty to arbitrate after the CBA containing a broad arbitration clause has expired. Disputes "arising under the contract" are presumed to be arbitrable under a broad arbitration clause. Litton, 501 U.S. at 205. "A postexpiration grievance can be said to arise under the contract only where it involves facts and occurrences that arose before expiration, where an action taken after expiration infringes a right that accrued or vested under the agreement, or where, under normal principles of contract interpretation, the disputed contractual right survives expiration of the remainder of the agreement." Id. at 205-06.

Although the courts normally will leave interpretation of the provisions of a CBA containing a broad arbitration clause to the arbitrator, "in the context of an expired bargaining agreement," the court may be required to examine the contract to determine whether the claims at issue arose under the contract. Id. at 209. Generally, "questions of contract termination are

for the court rather than the arbitrator." <u>Rochdale Village,</u>
<u>Inc. v. Pub. Serv. Employees Union</u>, 605 F.2d 1290, 1295 (2d Cir.
1979)  Moreover, under a narrower arbitration clause that does
not provide for resolution of matters collateral to the
agreement, such as termination, the question of arbitrability
will be for the court.  <u>Id.</u> at 1296.

On the other hand, where the arbitration clause is
broad enough that it includes "disputes 'of any nature or
character,' or simply 'any and all disputes,' all questions,
including those regarding termination, will be properly
consigned to the arbitrator."  <u>Id.</u> at 1295.  If the arbitration
clause is broad, the question of whether the CBA has been
terminated will be for the arbitrator to decide if there is "at
least a colorable claim under the contract that the contract has
not terminated."  <u>Ottley v. Sheepshead Nursing Home</u>, 688 F.2d
883, 886 (2d Cir. 1982); <u>Cleveland Wrecking Co. v. Iron Workers</u>
<u>Local Union 40</u>, 947 F. Supp. 745, 749 (S.D.N.Y. 1996) (citing
<u>Ottley</u>) (<u>aff'd, criticized on other grounds</u>, 136 F.3d 884 (2d
Cir. 1997)).  Where the arbitration clause is broad, and
includes in its scope questions of interpretation of the CBA,
the question of whether an evergreen clause keeps the
arbitration clause of a CBA in effect post-expiration will be
for the arbitrator to decide.  <u>Abram Landau Real Estate v.</u>
<u>Bevona</u>, 123 F.3d 69, 73 (2d Cir. 1997).  In <u>Abram Landau</u>, the

parties agreed that they were bound by a CBA covering the underlying dispute, but they disagreed about whether the evergreen clause in the CBA "prolonged the life of the agreement." Id. at 74 (determining that interpretation of the evergreen clause was for the arbitrator because the arbitration clause called for submitting to the arbitrator "*all* disputes between the parties *involving* the interpretation of any provision" of the CBA).

## III. ANALYSIS

### A.    Effect of the 2003 Association CBA Agreement to Arbitrate on Local 7 and Speedwell

#### 1.    *Arguments of the parties*

Pursuant to Litton, the court must first determine whether the 2003 Association CBA constitutes an agreement to arbitrate between Local 7 and Speedwell.  The core issue in dispute here is whether Speedwell is bound by the 2003 Association CBA negotiated between Local 7 and the Associations. Local 7 argues that Speedwell is bound by the 2003 Association CBA because Speedwell never gave notice terminating the 2001 Local 52 CBA, and the evergreen clause in the 2001 Local 52 CBA therefore has the effect of binding Speedwell to the 2003 Association CBA as the "successor" CBA to the 2001 Local 52 CBA. According to Local 7, it negotiated the 2003 Association CBA as a "successor agreement" which "consolidated the terms and

22

conditions contained in the predecessor contracts of Locals 52, 77, and 88 to create one industry-wide Tile CBA." (Hill Aff., ¶ 20.) Local 7 claims that the 2003 Association CBA therefore incorporated and succeeded the 2001 Local 52 CBA and, because Speedwell never gave notice terminating the 2001 Local 52 CBA, Speedwell became bound to the 2003 Association CBA as the "successor" of the 2001 Local 52 CBA.

Speedwell contends that even if the 2001 Local 52 CBA continues to be in effect due to its evergreen clause, the 2003 Association CBA is a distinct CBA. Speedwell claims it is not bound by the 2003 Association CBA because Speedwell was never a member of either of the Associations that negotiated the 2003 Association CBA, did not sign the 2003 Association CBA, had no notice of the negotiations leading to the 2003 Association CBA, and did not even see a copy of the 2003 Association CBA until this action was filed.

### 2. Binding effect of the 2003 Association CBA on Speedwell

The court finds that the recent Second Circuit decision in Dow Electric, Inc. v. Int'l Bhd. of Elec. Workers, 283 Fed. App'x 841, 842 (2d Cir. 2008) (summary order affirming 500 F. Supp. 2d 148 (N.D.N.Y. 2007)), indicates that Speedwell is not bound by the 2003 Association CBA. In Dow Electric, the Second Circuit found that after an employer had withdrawn its

delegation of contract-negotiating authority from a multi-employer association, that employer could not be bound by a CBA negotiated between the union and the multi-employer association. 283 Fed. App'x at 842. The district court's recitation of the facts of Dow Electric reveals its relevance to the present case. The employer, Dow Electric, withdrew from the multi-employer association that had negotiated the relevant CBA well before the deadline for expiration of the CBA, giving notice to both the association and the union. 500 F. Supp. 2d at 150-51. The union and the association then negotiated a successor CBA without notice to the employer, who was no longer a member of the association. Id. at 151. The union subsequently took the position that the employer was still bound to the successor CBA by letters of assent to membership in the association, which the employer had signed when it initially joined the association. Id. at 150, 151. The union then commenced arbitration against the employer under the successor CBA, and the employer refused to participate on the grounds that the arbitration "ha[d] no basis in any contractual relationship." Id. at 152. The arbitrator found that the employer was bound by the successor CBA, id., but the court disagreed. Although noting that withdrawal of membership in the multiemployer association and withdrawal of negotiating authority from the association were distinct, the court held that the employer had withdrawn

24

negotiating authority as well as membership.  Id. at 154-55.
Finding that subsequent events did not retract the employer's
withdrawal from the association, the court held that the
association could not bind the employer to the successor CBA,
and the arbitrator therefore had no authority over grievances
against the employer under the successor CBA.  Id. at 157.

Speedwell bears the same relationship to the 2003
Association CBA with Local 7 that Dow Electric bore to the
successor CBA negotiated by an association of which it was not a
member.  It is undisputed that Speedwell is not a member of
either of the employer associations involved in negotiating and
signing the 2003 Association CBA with Local 7.[9]  Local 7 also
does not contest Speedwell's assertion that, before this
litigation, Speedwell had never received a copy of the 2003
Association Contract.  (Speedwell Opp. at 4.)  As in Dow
Electric, the union attempts to enforce arbitration against an
independent employer who did not participate in negotiating the
relevant CBA and never signed the relevant CBA.  Because
Speedwell never assented to the 2003 Association CBA — indeed,
never even received notice of the 2003 Association CBA until
this lawsuit — the 2003 Association CBA cannot bind Speedwell,

---

[9]    The 2003 CBA was negotiated and signed by Local 7 and two employer
associations, the New York and New Jersey Tile Contractors Association and
the Building Contractors Association of Atlantic County, Inc.  (Hill. Aff.,
¶ 20.)

pursuant to Dow Electric. 283 Fed. App'x at 842. The Second
Circuit has recently made a similar determination in a different
context, holding in Ross v. American Express Co., 547 F.3d 137,
142-43, that employers who never signed a contract with a credit
card company cannot be forced under the Federal Arbitration Act
to arbitrate disputes with the credit card company on the basis
of an arbitration clause contained only in the cardholder
agreements.

In Ottley v. Sheepshead Nursing Home, much as in Dow
Electric, the employer withdrew from a multiemployer association
in an attempt to terminate its collective bargaining
relationship with the union. 688 F.2d at 887. Ottley is
distinguishable from the present case, however, because the
employer in Ottley did not give notice to the union that it was
withdrawing from the association, and sought to make its
withdrawal effective immediately. Id. The court therefore
found a colorable claim that the withdrawal did not terminate
the CBA and affirmed the confirmation of the arbitration award.
Id. Here, however, there is no dispute that Speedwell was never
a member of the Associations that negotiated the 2003
Association CBA. Local 7 admittedly knew from the time it
entered into the 2001 Local 52 CBA with Speedwell that Speedwell
was an independent employer outside of the Associations with
which Local 7 negotiated its CBAs.

### 3.   *Effect of the evergreen clause in the 2001 Local 52 CBA*

Local 7 contends that the evergreen clause has the effect of binding Speedwell to a successor CBA that Speedwell has never seen, which Local 7 negotiated with Associations of which Speedwell has never been a member, where Speedwell received no notice of the negotiations and did not sign the CBA that resulted from the negotiations.  Neither <u>Dow Electric</u> nor <u>Ross</u> addressed an evergreen clause and thus neither is directly on point.  The court notes, however, that Local 7 has cited no authority in support of its interpretation of the evergreen clause, and the court's own research has located none.

The plain language of the evergreen clause does not suggest that it would bind Speedwell to a successor CBA where Speedwell (a) had no notice of the negotiations, (b) did not participate in negotiating the successor CBA, (c) did not sign the successor CBA, (d) was not a member of the Associations that did have notice, negotiate and sign the successor CBA, and (e) never received a copy of the successor CBA.  The 2001 Local 52 CBA evergreen clause merely indicates, in relevant part, that Local 7 and Speedwell "shall be held subject to all provisions herein contained while the Agreement continues in force" and that "[n]otice of any contemplated changes by either side shall be given in writing by the party contemplating such change or

changes at least three (3) months prior to the expiration of this Agreement, and unless such notice is received within the time herein specified, this Agreement shall be considered binding until a new Agreement is signed." (Local 7 Mot. Ex. 2, Art. XXIV § 1.) The evergreen clause indicates that notice is required for "contemplated changes by *either side*" (emphasis added). In negotiating the 2003 Association CBA with the Associations, Local 7, by its own admission, contemplated major changes to its collective bargaining structure. Yet Local 7 does not dispute that it gave Speedwell no notice of these changes and did not even provide Speedwell with a copy of the 2003 Association CBA until it sued Speedwell in late 2006 for violating that agreement. The court therefore finds that Local 7 failed to give the notice of contemplated changes required under the evergreen clause of the 2001 Local 52 CBA.

The differences between the scope of the arbitration clauses in the 2001 Local 52 CBA and the 2003 Association CBA also reveal significant changes that support a finding that the evergreen clause does not bind Speedwell to the 2003 Association CBA. The arbitration clause in the 2003 Association CBA is significantly broader than the arbitration clause in the 2001 Local 52 CBA. The 2001 Local 52 CBA's arbitration clause provides for arbitration, in relevant part, only of "charges and complaints arising out of the violation of any terms, covenants

or conditions contained in this Agreement except claims, disputes and demands arising out of the Employer's fringe benefit contribution and audit obligations[.]"  (Local 7 Mot. Ex. 2, Art. XV § 1.)  The 2003 Association CBA, on the other hand, adopts broad arbitration language directed toward the construal of the contract as a whole, stating in relevant part, that arbitration shall be the remedy "in the event a dispute arises in connection with the meaning, interpretation, or application of this Agreement, including but not limited to disputes regarding work rules, overtime, etc.," and adding procedural rules absent in the 2001 Local 52 CBA ("the Joint Arbitration Board . . .  shall have all the powers granted to arbitrators pursuant to the Civil Practice Law and Rules of the State of New York and shall be authorized to compel the production of books and records involved in a dispute.")  (Local 7 Mot., Ex. 3, Art. XX § 1(B).)  The broadened scope of the 2003 Association CBA's arbitration clause cautions against finding the 2003 Association CBA a mere successor agreement to the 2001 Local 52 CBA.

In Seabury Constr. Co. v. Dist. Council of N.Y. and Vicinity of the United Bhd. of Carpenters and Joiners of America, 461 F. Supp. 2d 193 (S.D.N.Y. 2006), the employer signed a CBA with an evergreen clause that renewed the contract for one year periods, absent notice within 60 to 90 days of

expiration. Id. at 195. The employer and union then signed an
Interim Agreement extending the CBA until a successor agreement
could be negotiated, but the employer never signed the successor
agreement. Id. The court held that the employer, which had
received a copy of the successor CBA, was bound to the successor
CBA's arbitration clause by virtue of signing the Interim
Agreement, which specified that the employer would be "bound to
the terms contained in the New Agreement(s) . . . by virtue of
executing this agreement, regardless of whether [the employer]
actually executes a successor agreement." Id. at 196. There is
nothing similar in the 2001 Local 52 CBA's evergreen clause, and
furthermore, the employer in Seabury timely received a copy of
the agreement with which it was expected to comply.

    In Cibao Meat Prods., Inc. v. Nat'l Labor Relations
Bd., 547 F.3d 336 (2d Cir. 2008), the CBA expired and the
employer unilaterally ceased paying into union fringe benefit
funds established pursuant to the CBA and Declaration of Trust,
which empowered the funds' Trustees to "modify, change, amend or
terminate to any extent any or all of the terms and provisions"
of the benefit funds plan. 547 F.3d at 337-38 (quotations and
citations omitted). Soon after, the funds established in the
CBA merged with a larger national set of funds, and informed the
employer of the change by letter. Id. at 338-39. The employer
argued that it was not bound to contribute to the successor

funds because its written agreement was only with the original funds.[10]  Id. at 341.  The court rejected this argument because the CBA required the employer to contribute to the funds according to the plans established by the funds' trustees, and the Declaration of Trust governing the funds gave the trustees "the right both to change the [funds'] name and to merge them" into the larger national funds.  Id.  The court held that the merger therefore "in no way relieved Cibao of its obligation to contribute" to the successor national funds.  Id.

The situation here is distinct from that in Cibao. Here, there is no clause in the CBA that permits Local 7 to unilaterally "modify, change, amend or terminate to any extent any or all of the terms and provisions" of the CBA, as the CBA in Cibao permitted the funds to do.  Id.  As discussed supra, it is also uncontested by Local 7 that no notice was given to Speedwell of the negotiations with the Associations and the merger of the various local CBAs into one industry-wide CBA, whereas in Cibao, the funds notified the employer of the merger. Id. at 338.

At most, the evergreen clause in the 2001 Local 52 CBA has the effect of continuing to bind Speedwell and Local 7 to the 2001 Local 52 CBA.  But the effectiveness of the 2001 Local

---

[10]     The statute at issue in Cibao, 29 U.S.C. § 186, specifically requires a written agreement in order for the employer to contribute to a union fringe benefit fund.

52 CBA is not at issue here, because Local 7 specifically *does not* seek to compel arbitration for violations of the 2001 Local 52 CBA.  Rather, Local 7 seeks to compel only for those violations allegedly arising under the 2003 Association CBA. (See Pet. ¶ 13; Local 7 Reply at 8 (distinguishing Local 7's claims under the 2001 Local 52 CBA from its claims under the 2003 Association CBA.))

### IV.  CONCLUSION

The court therefore finds, as a threshold matter, that the 2003 Association CBA does not bind Speedwell in a collective bargaining relationship with Local 7.  This finding is based on the decision in Dow Electric, in combination with the uncontested facts that Speedwell (a) was never a member of the Associations that negotiated the 2003 Association CBA with Local 7, (b) had no notice of those negotiations and did not participate in them, and (c) never signed or received a copy of the 2003 Association CBA until Local 7 sued to compel arbitration under the 2003 Association CBA in September 2006. Having determined that the 2003 Association CBA does not bind Speedwell, the court need not address the other issues raised by the parties regarding arbitration.  Speedwell cannot be compelled to arbitrate grievances under a CBA to which it is not a party.

No material facts regarding the effectiveness of the 2003 Association CBA are at issue here, and the court therefore denies Local 7's motion for summary judgment to compel arbitration under the 2003 Association CBA, grants summary judgment to Speedwell, and dismisses Local 7's petition under the 2003 Association CBA.

**SO ORDERED.**

Dated: March 31, 2009
        Brooklyn, New York

_____ \_\_/s/_____ _____
KIYO A. MATSUMOTO
United States District Judge